IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMUEL R. CONTRERAS,                          Civil No. 07-366-AA
                                                OPINION AND ORDER
        Plaintiff,

    vs.


ERNIE ROBERTS, KALEN TAYLOR, and the
CITY OF SANDY, OREGON,

        Defendants.
_____

Edward A. Merrill
Merrill Law, P.C.
243 SW Scalehouse Lp., Suite 1B
Bend, OR 97702
    Attorney for Plaintiff

Bruce L. Mowery
280 Liberty St., SE, Suite 206
Salem, OR 97301
    Attorney for Defendants

AIKEN, Judge:

Pending before the court is defendants Ernie Roberts ("Roberts"), Kalen Taylor ("Taylor"), and the City of Sandy's ("City") (collectively, "defendants") motion for summary judgment.  Plaintiff brings six claims pursuant to 42 U.S.C. § 1983, a 42 U.S.C. § 1985 claim, and nine state law claims pursuant to the Oregon Tort Claims Act ("OTCA").  These claims include:

> (1) 42 U.S.C. § 1983 claim for unreasonable search and seizure against defendants Roberts and City pursuant to the U.S. Constitution's Fourth Amendment;

> (2) 42 U.S.C. § 1983 claim for false arrest, occurring on May 27, 2006, against defendants Roberts and City;

> (3) 42 U.S.C. § 1983 claim for presentation of false evidence against defendants Roberts in his individual and official capacity and City pursuant to the Fifth and Fourteenth Amendment;

> (4) 42 U.S.C. § 1983 claim for false arrest, occurring on June 4, 2006, against defendants Roberts in his individual and official capacity and City pursuant to the Fourth Amendment;

> (5) 42 U.S.C. § 1983 claim for malicious prosecution, regarding plaintiff's May 27, 2006 arrest, against defendants Roberts in his individual and official capacity and City;

> (6) 42 U.S.C. § 1983 claim for malicious prosecution, regarding plaintiff's June 4, 2006 arrest, against defendants;

> (7) 42 U.S.C. § 1985 claim for conspiracy against defendants;

> (8) OTCA claim for false arrest, regarding plaintiff's May 27, 2006 arrest, against defendant City;

(9) OTCA claim for false arrest, regarding plaintiff's June 4, 2006 arrest, against defendant City;

(10) OTCA claim for malicious prosecution, regarding plaintiff's May 27, 2006 arrest, against defendant City;

(11) OTCA claim for malicious prosecution, regarding plaintiff's June 4, 2006 arrest, against defendant City;

(12) OTCA claim for intentional infliction of emotional distress, regarding plaintiff's May 27, 2006 arrest, against defendant City;

(13) OTCA claim for intentional infliction of emotional distress, regarding plaintiff's June 4, 2006 arrest, against defendant City;

(14) OTCA claim for negligent investigation against defendant City;

(15) OTCA claim for abuse of process, regarding plaintiff's May 27, 2006 arrest, against defendant City;

(16) OTCA claim for abuse of process, regarding plaintiff's June 4, 2006 arrest, against defendant City;

Plaintiff withdrew claims fourteen, fifteen, and sixteen. Plaintiff's Memo. in Support, p. 22. For the reasons set forth below, defendants' motion on plaintiff's remaining federal claims is granted. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, therefore, those claims are also dismissed.

<u>BACKGROUND</u>

Plaintiff Samuel Contreras, allegedly Native American, contends he was subjected to unlawful search and seizure, false arrest, and malicious prosecution by Ernie Roberts and Kalen Taylor, police officers employed by the City of Sandy, and the

City of Sandy.  Plaintiff also alleges intentional infliction of
emotional distress as a result of these events.

On May 27, 2006, Ms. Kari Kelly ("Kelly") called 911 as a
result of a domestic dispute between her and plaintiff.
Defendant Roberts was dispatched to a private residence in
response to the 911 call.  Roberts allegedly knew this residence
to be a known location for drug users.  Roberts approached the
house and was met by plaintiff out front.  Roberts searched
plaintiff, allegedly on suspicion that people who have drugs have
weapons, and found a knife in a sheath on plaintiff's belt.
Plaintiff consented to the search and stated he used the knife
for work. Roberts returned the knife to plaintiff and released
him.

Shortly thereafter, Roberts and Clackamas County Sheriff's
Deputy Wold went to a restaurant called Route 26 looking for
plaintiff based on information allegedly received from Kelly that
plaintiff possessed drugs.  Before arriving at the restaurant,
Roberts and Deputy Wold reviewed Roberts' pocket edition of the
Penal Code, and determined plaintiff's knife might be a concealed
weapon, prohibited by statute.  Thus, when they located plaintiff
at the restaurant, Roberts searched plaintiff a second time,
found the knife, and arrested him for carrying a concealed
weapon.  Plaintiff denied the knife was a concealed weapon.
Plaintiff admits he responded "of course" when asked by Roberts

for permission to search him, but only because plaintiff believed
the search was permissible incident to his arrest.  Plaintiff now
argues he should not have been searched because he had not
committed a crime.  All other items from plaintiff's pockets were
removed and placed on the windowsill.  It is uncertain whether a
matchbook found by Roberts later was removed from plaintiff's
pocket during the original search.  No drugs were found on
plaintiff during this search.

Roberts then allegedly asked plaintiff whether there were
any drugs or weapons in the bags that plaintiff had dropped off
at his storage unit. Plaintiff answered "no." Plaintiff denies
that Roberts asked him about any bags because he asserts he did
not have any bags.  Nonetheless, plaintiff admits being
transported to an area near storage units.  Roberts then
allegedly asked whether he could search the bags and plaintiff
allegedly consented, which plaintiff disputes.  Roberts did not
find any drugs in the bags at the storage unit.  Plaintiff was
then allegedly transported back to the private residence.

After arriving at the residence, Roberts left his patrol
car, leaving plaintiff in the car, and went to the residence to
speak with Kelly.  Kelly allegedly stated that drugs were in a
matchbook in plaintiff's pocket.  Roberts then searched plaintiff
a third time, allegedly again with plaintiff's consent.  It is
disputed where this search took place.  Plaintiff argues it was

at the storage unit while defendants contend it was at the private residence. When Roberts withdrew his hand from plaintiff's right front jacket pocket, he had in his hand a small matchbook with substances inserted in it. This substance was later tested to be methamphetamine. Roberts believes he had checked the pocket before but was not certain. Plaintiff asserts Roberts had searched plaintiff's pockets at the Route 26 restaurant and did not find a matchbook.

Plaintiff denies ownership of the matchbook and the drugs. Plaintiff alleges Roberts placed the drugs in his pocket since he was searched twice before and no contraband had been found during those searches. In addition, plaintiff contends Roberts coordinated with Kelly to plant the drugs on plaintiff. Roberts denies these accusations. Plaintiff was then charged with possession of a controlled substance and held in Clackamas County jail for approximately two days before being released. Roberts relied on Kelly's information because he knew her to be someone associated with plaintiff and would thus know his possessions and habits. Further, he knew her to be associated with drug users, and frequently found near drug activity, therefore she would know whether plaintiff possessed drugs. Plaintiff argues Kelly is not credible due to her own use of methamphetamine several times during this time period and also due to memory problems from a recent hospitalization.

Subsequent to plaintiff's arrest and incarceration, Kelly wrote several letters concerning plaintiff's May 27, 2006 arrest, including two to plaintiff, apologizing for setting him up by planting drugs on him and calling the police. Kelly wrote one letter, stating that she had planted some methamphetamine on plaintiff, notarized it, and gave it to plaintiff. Plaintiff alleges Kelly notarized it on her own accord and was not threatened or subject to duress by plaintiff. Plaintiff faxed the letter to the Sandy Police Department as proof of his innocence.

Roberts received the letter on or around June 4, 2006, and allegedly contacted Kelly to discuss the letter. Kelly went to the police department on June 4, 2006 and allegedly explained that plaintiff had threatened and coerced her into writing the letter. Plaintiff denies threatening Kelly and denies defendants' contention that she admitted to be being threatened. Plaintiff asserts that it was Kelly's idea to write the letter. Roberts, however, believed Kelly's account that she was coerced by plaintiff into writing the letter. Roberts found Kelly credible because she did not appear to be under the influence of intoxicants and he had no reason to believe she was being untruthful. Plaintiff alleges Kelly changed her mind because Roberts threatened to arrest her for tampering with a witness. After an investigation, Roberts concluded Kelly was being

truthful based on Kelly's recorded statements.  Plaintiff objects
to the admissibility of the recorded interview as not being
authentic and to the transcript as not being available to
plaintiff during discovery.

On June 4, 2006, Roberts then proceeded to Route 26 to
arrest plaintiff for tampering with a witness.  Defendant Taylor
was called to serve as a back-up officer for the arrest.  Officer
Taylor argues he was not involved in Roberts' May 27th arrest of
plaintiff, which plaintiff concedes, nor was he directly involved
in plaintiff's June 4th arrest. Plaintiff, however, then goes on
to deny Officer Taylor's limited role citing a number of previous
incidents between plaintiff and Officer Taylor.  Plaintiff
alleges Officer Taylor "had it out for him."

On July 8, 2006, plaintiff was further indicted for unlawful
possession of methamphetamine, coercion, and tampering with a
witness based on his two arrests.  Plaintiff was incarcerated for
eighty-eight days before being released on August 29, 2006.   On
August 30, 2006, the Clackamas Country District Attorney moved to
dismiss all charges against plaintiff stemming from these two
arrests on the grounds that the State could not prove the charges
beyond a reasonable doubt.  Plaintiff first served notice of this
lawsuit to the City on November 30, 2006 pursuant to the OTCA.

Defendants deny plaintiff's allegations that the Sandy
Police Department has a "give-up three and go free" policy which

allows any suspect to go free in exchange for information concerning criminal activity.  Plaintiff argues Kelly told him that she had to "give up" two more people before she could get out of trouble.  Defendants Roberts and Taylor argue they have had proper training, education, and experience in criminal investigations, probable cause, and other constitutional issues. Plaintiff contends the officers were not properly supervised or trained to uphold citizens' constitutional rights.  For instance, among other constitutional violations, plaintiff alleges he did not receive his Miranda rights when arrested by  Roberts on May 27, 2006.

In addition, plaintiff argues that defendant officers have not been subject to proper supervision and discipline by their sergeants.  Defendants contend Chief of Police Harold Skelton reviewed their reports, conducted an investigation, and found that the actions of the two officers were justified.  Defendants contend Chief Skelton thoroughly investigated the matters involving plaintiff.  Plaintiff refutes that Chief Skelton thoroughly investigated plaintiff's situation.

<u>STANDARDS</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

DISCUSSION

1. Federal Constitutional Claims

A. Background

A plaintiff may bring a claim under 42 U.S.C. § 1983 to

redress violations of "rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws" that occur under the color of state law.  Plaintiff's claims under § 1983 are based on defendants' alleged violations of his Fourth and Fourteenth Amendment rights under the U.S. Constitution. Plaintiff also claims conspiracy in violation of his civil rights pursuant to § 1985.  Government officials who have been sued in their official capacities, and in the course of performing discretionary duties of their office, under § 1983 are allowed to assert the affirmative defense of qualified immunity.  Butler v. Elle, 281 F.3d 1014, 1021 (9th Cir. 2002).

Defendants Roberts and Taylor assert qualified immunity from plaintiff's § 1983 claims. Plaintiff may overcome a qualified immunity defense when asserting a cause of action under § 1983 if he demonstrates: (1) the defendant's actions violated a federal constitutional right; and (2) the right alleged to have been violated was clearly established at the time of the conduct at issue.  Saucier v. Katz, 533 U.S. 194, 201 (2001). As part of the first step, this court must consider all materials submitted in support of, and in opposition to, summary judgment, in order to determine whether a constitutional right would be violated if all facts were found in favor of the plaintiff. Jeffers v. Gomez, 267 F.3d 895, 909 (9th Cir. 2001) (internal citation omitted). Further inquiries concerning qualified immunity are not necessary

Page 11 - OPINION AND ORDER

if no constitutional right has been violated. <u>Saucier</u>, 533 U.S.
at 201.

If a right has been violated, the court must determine
whether the right was "clearly established" such that a
reasonable officer thought his or her conduct was unlawful in the
situation he or she confronted. <u>Billington v. Smith</u>, 292 F.3d
1177, 1184 (9th Cir. 2002).  In addition, an officer is entitled
to qualified immunity even if he or she makes a mistake on how
the relevant legal doctrine applies to the particular factual
situation, as long as the mistake is reasonable. <u>Saucier</u>, 533
U.S. at 201.  Plaintiff must show the alleged action "was such a
far cry from what any reasonable *** official could have believed
was legal that the defendants knew or should have known they were
breaking the law." <u>Sorrels v. McKee</u>, 290 F.3d 965, 971 (9th Cir.
2002).  Therefore, I must determine whether defendants Roberts or
Taylor violated plaintiff's constitutional rights under § 1983.

<u>     B. Search and Seizure and False Arrest</u>

      Plaintiff alleges violations of his Fourth Amendment rights
under the U.S. Constitution based on the following actions: (1)
defendants Roberts and City's unreasonable search and seizure
(first claim); (2) defendants Roberts and City's false arrest on
May 27, 2006 (second claim); (3) defendants Roberts and City's
presentation of false evidence (third claim); and (4) defendants'
Roberts, Taylor and City's false arrest on June 4, 2006 (fourth

claim).

    I. <u>City Liability</u>

A governmental entity may be liable under § 1983 only if the plaintiff shows: (1) he was deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to a deliberate indifference to his constitutional rights; and (4) the policy is the moving force behind the constitutional violation. <u>Mabe v. San Bernadino County Dep't of Pub. Soc. Servs.</u>, 237 F.3d 1101, 1111 (9th Cir. 2001). Governmental liability for unconstitutional conduct even reaches informal policies that occur based on practices of state officials that are customary and well-settled. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978). However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985). In addition, governmental entities may become liable if they have policies of inaction that amount to a failure to protect constitutional rights. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 681 (9th Cir. 2001).

Plaintiff contends the City of Sandy has adopted an informal policy called "Give-Up Three/Go Free" which allegedly encourages

residents to provide three names of individuals that the Sandy
Police department should investigate for criminal activity, in
exchange for favorable treatment for their own criminal activity.
Plaintiff relies on contradictory statements made by defendants
when Roberts stated that Sandy police officers pay informants
while Chief Skelton denies any such program. Plaintiff also
argues Kelly took advantage of this policy when she told Roberts
that plaintiff possessed illegal drugs, which allowed her to be
released from jail.  In addition, Kelly allegedly told plaintiff
she only had to give up two more people to mitigate the effects
of a prior arrest.

Defendants first clarify the City does not pay money to
informants except in the context of a controlled drug buy.
Although Kelly was arrested prior to her October 2007 deposition
and later released, defendants argue there is no evidence that
the City or any police officer was involved in that decision.  In
addition, defendants point out that Kelly stated she received no
preferential treatment in exchange for providing information
about plaintiff.

I agree with defendants and find there is no evidence that
the alleged "Give-Up Three/Go Free" policy is well-settled and
customary within the Sandy Police Department. Kelly stated in her
deposition that she did not offer any information to police about
any other drug users in the area.  Plaintiff has not identified

Page 14 - OPINION AND ORDER

any other evidence to support that this policy exists.

Plaintiff also argues the City had a policy of inaction based on the City's failure to train its employees. For complaints alleging a policy failing to train police officers, the plaintiff must show: (1) he was deprived of a constitutional right; (2) the City's training policy amounted to deliberate indifference to plaintiff's constitutional rights with whom its police officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the City properly trained those officers. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007). See also City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). Further, in order to show that there is a direct link between a city policy and a constitutional violation, the plaintiff must show the city made a "deliberate" or "conscious" decision to fail to train its employees adequately. Mackinney v. Nielsen, 69 F.3d 1002, 1010 (9th Cir. 1995).

Plaintiff contends Roberts was not properly trained by Chief Skelton and his sergeants because if he had been properly trained, the alleged unlawful search and seizure would have been avoided. Plaintiff also relies on the fact that since plaintiff's charges were eventually dropped by the district attorney, Roberts' actions in arresting plaintiff were unfounded and therefore unlawful. However, defendants argue that more

Page 15 - OPINION AND ORDER

training would have been unnecessary for officers to know whether searching someone without probable cause is unlawful.

I again agree with the defendants and find no evidence that the City made a deliberate or conscious decision not to train its officers to determine whether they have probable cause to arrest a citizen.  Furthermore, there is no evidence that Chief Skelton's oversight, or lack of oversight as plaintiff alleges, of this case relates to a lack of adequate training as required by law. In addition, dismissal of criminal charges is not equivalent to an unlawful search or seizure.  A police officer may still have probable cause to arrest a citizen without criminal charges being brought by a district attorney.

There is no evidence that the City had an informal policy of providing preferential treatment to citizens who provided information to the police of criminal acts. In addition, there is no genuine issue of material fact which shows the Sandy Police Department had a policy of inaction by failing to provide adequate training to its officers regarding the probable cause necessary to arrest a citizen. Thus, I find the City is entitled to summary judgment on plaintiff's § 1983 claims.  Therefore, plaintiff's claims under § 1983 against the City are dismissed.

II. <u>Defendants Roberts and Taylor's Liability</u>

Plaintiff also alleges unlawful search and seizure, false arrest, and false presentation of evidence against Roberts

Page 16 - OPINION AND ORDER

pursuant to the Fourth Amendment of the U.S. Constitution.
Plaintiff alleges false arrest against Taylor.

Pursuant to the Fourth Amendment, a law enforcement officer
may not search an individual unless probable cause has been
established that the individual has committed, or is about to
commit, a crime.  Beck v. Ohio, 379 U.S. 89, 91 (1964); Allen v.
City of Portland, 73 F.3d 232, 235 (9th Cir. 1995). Probable
cause existed if "at the moment the arrest was made . . . the
facts and circumstances within their knowledge and of which they
had reasonably trustworthy information were sufficient to warrant
a prudent man in believing" that plaintiff had committed a crime.
Beck, 379 U.S. at 91; United States v. Martin, 509 F.2d 1211,
1213 (9th Cir. 1975).  The police are only required to believe
that there is a fair probability, given the totality of the
circumstances, that a crime has been committed or is about to be
committed. United States v. Lopez, 482 F.3d 1067, 1078 (9th
Cir.), cert. denied, 128 S.Ct. 335( 2007).

Further, an officer determines whether he or she has
probable cause based on his or her experience in the field and
other "factual and practical considerations of everyday life in
which reasonable and prudent men, not legal technicians, act."
Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v.
United States, 338 U.S. 160, 175 (1949)).  An eye-witness to a
crime or a victim of a criminal act who voluntarily provides

information who is deemed credible and reliable, along with underlying circumstances, creates probable cause for officers to act upon.  United States v. Hammond, 666 F.2d 435, 439 (9th Cir. 1982); United States v. Huberts, 637 F.2d 630 (9th Cir. 1980).

Plaintiff argues Roberts did not have probable cause to arrest him for carrying a concealed weapon pursuant to ORS § 166.240,[1] for possession of methamphetamine pursuant to ORS § 475.894,[2] and for coercion and tampering with a witness pursuant to ORS §§ 163.275 and ORS 162.285 respectively.[3]

---

[1] ORS § 166.240 provides in part:

(1) Except as provided in subsection (2) of this section, any person who carries concealed upon the person any knife having a blade that projects or swings into position by force of a spring or by centrifugal force, any dirk, dagger, ice pick, slung shot, metal knuckles, or any similar instrument by the use of which could be inflicted upon the person or property of any other person, commit a Class B misdemeanor.

[2] ORS § 475.894 provides in part:

(1) It is unlawful for any person knowingly or intentionally to possess methamphetamine unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice, or except as otherwise authorized by ORS 475.005 to 475.285 and 475.840 to 475.980.

[3] ORS § 163.275 provides in part:

(1) A person commits the crime of coercion when the person compels or induces another person to engage in conduct from which the other person has a legal right to abstain, or to abstain from engaging in conduct in which the other person has a legal right to engage, by

means of instilling in the other person a fear that, if
the other person refrains from the conduct compelled or
induced or engages in conduct contrary to the
compulsion or inducement, the actor or another will:

(a) Unlawfully cause physical injury to some
person;

(b) Unlawfully cause damage to property;

(c) Engage in conduct constituting a crime;

(d) Falsely accuse some person of a crime or cause
criminal charges to be instituted against the
person;

(e) Cause or continue a strike, boycott or other
collective action injurious to some person's
business, except that such a threat is not deemed
coercive when the act or omission compelled is for
the benefit of the group in whose interest the
actor purports to act;

(f) Testify falsely or provide false information
or withhold testimony or information with respect
to another's legal claim or defense; or

(g) Unlawfully use or abuse the person's position
as a public servant by performing some act within
or related to official duties, or by failing or
refusing to perform an official duty, in such
manner as to affect some person adversely.

ORS § 162.285 provides in part:

(1) A person commits the crime of tampering with a
witness if:

(a) The person knowingly induces or attempts to
induce a witness or a person the person believes
may be called as a witness in any official
proceeding to offer false testimony or unlawfully
withhold any testimony; or

(b) The person knowingly induces or attempts to

(a) <u>Arrest for carrying a concealed weapon</u>

Plaintiff contends Roberts arrested him at the Route 26 restaurant on May 27, 2006 for carrying a concealed weapon without probable cause. Plaintiff relies on the fact that Officer Roberts had first observed the knife at the private residence and nonetheless released both the knife and plaintiff. Plaintiff also argues that the weapon was not concealed as it was in a black nylon case on his right hip. Plaintiff next asserts that he only consented to the search because he thought it was permissible incident to his arrest. Finally, plaintiff argues that since the charge was dismissed, because his knife was not described in the penal code statute, these facts are sufficient to show Officer Roberts lacked probable cause to search plaintiff.

It is undisputed that Officer Roberts initially observed the knife during the search of plaintiff at the private residence and yet released him. However, Roberts contends that he looked at the penal code statute after this initial search to determine whether there was a possible violation of the concealed weapon statute.

Based on Roberts initial search of plaintiff and observation

---

induce a witness to be absent from any official
proceeding to which the person has been legally
summoned.

of the knife, he had sufficient information to believe that
plaintiff still had the knife on him when he arrested him later
at the Route 26 restaurant.  I find under the facts and
circumstances of this search Officer Roberts had probable cause
to search plaintiff at the restaurant.  It is well settled law
that officers have the right to conduct a pat-down search
incident to a valid custodial arrest.  Chimel v. California, 395
U.S. 752, 763 (1969); United States v. Robinson, 414 U.S. 218,
235 (1973) ("a custodial arrest of a suspect based on probable
cause is a reasonable intrusion under the Fourth Amendment; that
intrusion being lawful, a search incident to the arrest requires
no additional justification").  Furthermore, dismissal of these
charges does not equate to a finding that Officer Roberts did not
have a reasonable belief that plaintiff's knife might have been a
weapon as described in ORS § 166.240.

    Plaintiff also asserts that he did not consent to the
search.  Defendants contend plaintiff voluntarily consented to
the search when plaintiff answered, "of course" when Officer
Roberts asked plaintiff for permission to conduct the search.
Plaintiff has failed to show that his consent was involuntary. I
find no evidence to suggest that Officer Roberts' conduct was
coercive. The scope of a subject's consent under the Fourth
Amendment is assessed under an 'objective reasonableness'
standard which asks what a reasonable person would have

understood by the exchange between the officer and suspect.

United States v. Cannon, 29 F.3d 472, 477 (9th Cir. 1994). Again,

plaintiff responded, "of course" to Officer Roberts' request to

search him.  Throughout the search, there is no evidence that

plaintiff protested.  Thus, I find that plaintiff consented to

the search and therefore find no violation of his Fourth

Amendment constitutional rights.

(b) Arrest for possession of methamphetamine

Plaintiff argues Officer Roberts did not have probable

cause to arrest plaintiff for possession of methamphetamine on

May 27, 2006.  Plaintiff relies on the fact Officer Roberts had

previously searched plaintiff at the Route 26 restaurant and

found no drugs.  Plaintiff contends Officer Roberts searched

plaintiff's pockets inside and out and emptied them out.

Thereafter, plaintiff was searched a third time based on

information provided by Kelly, and Officer Roberts found

methamphetamine inside a matchbook.  Plaintiff argues that the

matchbook had not been in his possession prior to this search.

Plaintiff accuses Officer Roberts of planting the drugs on him.

Defendant Roberts argues he received information from Kelly

that plaintiff was in possession of drugs. In addition, he states

he had knowledge that the residence was a known drug house.

Therefore, based on this information, the facts and circumstances

caused Officer Roberts to reasonably believe that plaintiff

possessed some type of drugs. Probable cause exists when law enforcement officials have some knowledge of facts and circumstances based on reasonably trustworthy information at the time of arrest that would warrant a belief by a reasonably prudent person that the person arrested has committed, or is about to commit, a criminal offense. <u>Franklin v. Fox</u>, 312 F.3d 423, 438 (9th Cir. 2002) (internal citations omitted). The evidence supports the probability of criminal activity.  Further, as mentioned previously, plaintiff voluntarily consented to this search and therefore a custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment. <u>Robinson</u>, 414 U.S. at 235.

> (c) <u>Arrest for coercion and tampering with a witness</u>

Plaintiff also contends Officers Roberts and Taylor did not have probable cause to arrest plaintiff for coercion or tampering with a witness on June 4, 2006. Plaintiff first states Officer Taylor had threatened plaintiff previously to put in him jail or to make him "disappear."  He also argues that since Officers Taylor and Roberts are friends, Officer Roberts would follow through with Officer Taylor's threats.  Defendants contend Officer Taylor simply served as a back-up officer for Officer Roberts during plaintiff's arrest.  I agree with defendants and find no evidence that Officer Taylor took part in plaintiff's arrest.  An officer who had no "integral participation" in the

arrest, as here, is not liable for allegedly unlawful conduct. See Chuman v. Wright, 76 F.3d 292, 294-95 (9th Cir. 1996). Thus, I dismiss all of plaintiff's § 1983 claims against Officer Taylor.

Defendant Roberts argues he had probable cause to arrest plaintiff for tampering with a witness based on the information he received from Kelly. Kelly told Roberts in an interview on June 4, 2006, that plaintiff had threatened and coerced her into writing the letter stating that she planted drugs on plaintiff. Roberts stated he found Kelly credible because she had been truthful with him on several occasions when he had spoken with her. Although Kelly was deposed 16 months later and stated that plaintiff had not threatened her, thereby contradicting her prior recorded statements to Officer Roberts, the issue here is whether Roberts had probable cause at the time of plaintiff's arrest. Therefore, based on this information, Roberts contends he had probable cause to arrest plaintiff for coercion and tampering at the time of Kelly's original statement to him.

Accordingly, I find that defendants Roberts and Taylor did not conduct an unreasonable search and seizure or a false arrest for either the arrest on May 27, 2006, or June 4, 2006. In addition, I find the City does not have municipal liability for the actions of defendants Roberts and Taylor. The defendants did not violate plaintiff's Fourth Amendment rights. Thus,

defendants' motion for summary judgment is granted on plaintiff's first, second, third, and fourth claims.

C. Malicious Prosecution

Plaintiff claims malicious prosecution for his May 27, 2006 arrest on the charges of unlawful prosecution of methamphetamine and for the June 4, 2006 arrest for tampering and coercion. In a § 1983 malicious prosecution claim, the plaintiff has the burden to show first that defendants prosecuted with malice and without probable cause. Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995). Second, that the underlying criminal proceeding terminated in plaintiff's favor. Heck v. Humphrey, 512 U.S. 477, 484-85 (1994). Finally, that the prosecution was conducted to deprive a person of equal protection or other specific constitutional rights. Awabdy v. City of Adelanto, 368 F.3d 1062, 1069 (9th Cir. 2004) (citing Freeman, 68 F.3d at 1189); Poppell v. City of San Diego, 149 F.3d 951, 962 (9th Cir. 1998).

Plaintiff argues defendants Roberts and Taylor acted with malice by planting the drugs on plaintiff and deprived plaintiff of his constitutional rights to be free from unreasonable search and seizures under the Fourth Amendment and the right to be free from deprivation of liberty without due process of law under the Fourteenth Amendment. Defendants argue plaintiff cannot demonstrate that either of these arrests were intended to subject plaintiff to a denial of his constitutional rights. Taylor argues

Page 25 - OPINION AND ORDER

he did not play an active role in plaintiff's arrest on June 4, 2006 and was not required to possess all of the available information. In addition, defendants argue the grand jury indictment was sufficient to show that Roberts had sufficient probable cause to arrest plaintiff. See Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975) ("an indictment 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry").

First, as mentioned previously, there is no evidence that Officer Taylor played a role in plaintiff's arrest on June 4, 2006. See Waldner v. Dow, 128 Or. App. 197, 201, 876 P.2d 785 (1994) ("[a] person who plays an active role in continuing an unfounded criminal proceeding may be liable for malicious prosecution"). Second, I previously found that based on information provided by Kelly to Officer Roberts, and Officer Roberts' assessment of Kelly's truthfulness and credibility, Officer Roberts had probable cause to arrest plaintiff for possession of methamphetamine and for tampering with and coercing a witness. There is no evidence that Officer Roberts acted with malice when he arrested plaintiff. The grand jury's indictment on June 8, 2006 also serves as evidence that Roberts had probable cause to arrest plaintiff.

Thus, I find Officers Roberts and Taylor did not violate

plaintiff's Fourth or Fourteenth Amendment constitutional rights. Since I find that Roberts and Taylor did not violate plaintiff's constitutional rights, they are entitled to qualified immunity from all constitutional claims brought under section 1983. Accordingly, defendants' motion for summary judgment is granted on plaintiff's fifth and sixth claims.

D. Conspiracy

Plaintiff's seventh claim against defendants is for conspiracy pursuant to 42 U.S.C. § 1985. In order to state a claim for relief under § 1985(3), the plaintiff must allege the following four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws; (3) an action of furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citing United Bhd. of Carpenters and Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)).  Further, the plaintiff must also establish some racial or class-based, invidiously discriminatory animus.  Sever, 978 F.2d at 1536 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Plaintiff first contends he is Native American.  Plaintiff

then argues Officers Taylor and Roberts conspired regarding his
June 4, 2006 arrest to deprive plaintiff of his Fourth Amendment
and Fourteenth Amendment rights of liberty.  Plaintiff states
that Officer Taylor had marked plaintiff as a "special project,"
based on plaintiff's past incidents with the law, and therefore
conspired with Officer Roberts to arrest him.  Plaintiff points
to discussions between Officers Taylor and Roberts in regards to
plaintiff's arrest.  Plaintiff argues the decision to arrest
plaintiff occurred before Roberts spoke to Kelly regarding her
statement that she was threatened and coerced by plaintiff into
writing the letter about planting drugs on plaintiff.  Plaintiff
asserts that Roberts and Taylor deprived plaintiff of his
constitutional rights by being held in jail for eighty-eight
days.

Defendants first argue that plaintiff did not claim in his
complaint, in his declaration, deposition testimony, or in any
other evidentiary document that defendants ever discriminated
against plaintiff due to his race.  Defendants also state  that
there was no agreement among the defendants that would suggest
they "reached an understanding" to deprive the plaintiff of equal
protection.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 151
(1970).  I find no evidence that race or ethnicity played a role
in Officer Roberts' conduct when arresting plaintiff.  In
addition, there is no evidence that Officers Roberts and Taylor

Page 28 - OPINION AND ORDER

conspired on June 4, 2006 for the purpose of depriving the plaintiff of equal protection of the laws or equal privileges and immunities under the law.  Thus, defendants' motion for summary judgment is granted on plaintiff's seventh claim.

2. State Law Claims Pursuant to OTCA

I need not consider plaintiff's remaining state law claims alleged against defendants as I decline to exercise supplemental jurisdiction over those remaining claims.  Title 28 U.S.C. § 1367 provides the basis for supplemental jurisdiction:

> Except as otherwise provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Subsection (c) of 28 U.S.C. § 1367 gives the court discretion to "decline to exercise" supplemental jurisdiction in various circumstances including when "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

That is exactly the situation at bar.  Here, defendants have filed a motion for summary judgment against plaintiff's federal claims, which the court has granted.  Remaining, are state law claims against defendants.  This court declines to exercise jurisdiction over any remaining state law claim.  Therefore, this

Page 29 - OPINION AND ORDER

complaint is dismissed in its entirety.

<u>CONCLUSION</u>

Defendants' motion for summary judgment (doc. 23) is granted as to defendants' federal claims.  The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, therefore, those claims are also dismissed.  Finally, defendants' motion to strike plaintiff's summary judgment opposition declaration (doc. 59) and plaintiff's motion to strike defendant Roberts deposition correction (doc. 72) are denied. This case is dismissed.

IT IS SO ORDERED.

Dated this ___1___ day of May, 2008.




_____/s/ Ann Aiken_____
Ann Aiken
United States District Judge

Page 30 - OPINION AND ORDER